FILED'05 SEP 27 11:10USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 03-30066-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CHRISTOPHER R. McLEAN, | |
| Defendant. | |

AIKEN, Judge:

Defendant moves to enforce the judgment imposing sentence in this case, or alternatively, to vacate his sentence under 28 U.S.C. § 2255, as a result of the Bureau of Prison's decision to terminate the Shock Incarceration Program. The government opposes the motion, arguing that the Bureau of Prisons has complied with the judgment, that defendant waived his right to collaterally attack his sentence, and that defendant asserts no grounds for relief under § 2255. Defendant's motion is granted and his sentence vacated.

1   - OPINION AND ORDER

## BACKGROUND

Under the Crime Control Act of 1990, Congress authorized the Bureau of Prisons (BOP) to create a federal boot camp program, known as the Shock Incarceration Program or Intensive Confinement Center program (the Program). Pub. L. No. 101-647, 1990 § 3001, 104 Stat. 4789, codified at 18 U.S.C. § 4046. Congress also authorized funding for the Program "for fiscal year 1990 and each fiscal year thereafter . . . as may be necessary to carry out the shock incarceration program established under the amendments made by this Act." Id. § 3002; 104 Stat. 4917. However, Congress has never appropriated funds specifically for the Program; instead, the BOP has funded the Program from lump-sum congressional appropriations such as those designated "for expenses necessary for the administration, operation, and maintenance of Federal penal and correctional institutions." Consolidated Appropriations Act of 2004, Pub. L. 108-199, 2004 HR 2673.

Generally, the Program consists of three phases: six months in a military-style correctional institution, six months in community corrections confinement, and a subsequent period of home confinement. 28 C.F.R. § 524.32. After successful completion of all three phases, a prisoner may be released from BOP custody up to six months prior to the expiration of the applicable term of imprisonment. Id. BOP regulations establish certain requirements prisoners must meet to be "eligib[le] for consideration" and

provide that placement in the Program "is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." Id. § 524.31(a),(b).

On June 16, 2004, defendant pled guilty to one count of distributing over 100 pounds of marijuana in violation of 21 U.S.C. § 841(a). Defendant's convictions arose from his involvement in a conspiracy to import marijuana from Canada and distribute it throughout the United States.

On December 16, 2004, the court sentenced defendant to thirty months imprisonment and recommended commitment "to [Intensive Confinement Center], Lompoc, CA or Sheridan, OR if the defendant is otherwise qualified as determined by the policies of the Bureau of Prisons." Judgment, p. 2. The court imposed sentence in reliance on the fact that a Shock Incarceration Program at an Intensive Confinement Center was an available option. Defendant was allowed to self-surrender at a later date.

On January 14, 2005, BOP Director Harley Lappin issued a memorandum to all federal judges, chief probation officers, public defenders, and United States attorneys in which the BOP advised that it was terminating the Program, "effective immediately." Apparently, the BOP decided to phase out the Program as a result of a budget shortfall in fiscal 2004 and studies that led the BOP to conclude that the Program did not reduce recidivism. Lappin stated that inmates currently enrolled in the Program would be allowed to

3   - OPINION AND ORDER

complete it, but no new classes would be offered. At the time of the Program's termination, defendant had not yet self-surrendered and was not enrolled in the Program.

On April 22, 2005, defendant filed a civil petition for writ of mandamus seeking an order that requires the BOP to rescind the termination of the Program and consider defendant's eligibility for participation in the Program. The case was assigned to Judge Hogan and subsequently transferred to the undersigned judge.[1]

On April 25, 2005, defendant filed the instant motion to enforce judgment, or in the alternative to correct, modify or vacate his sentence under 28 U.S.C. § 2255 based on the BOP's termination of the Program.

The cases were stayed pending Judge Brown's ruling in <u>United States v. Serrato</u>, Civ. No. 05-696-BR, and on August 8, 2005, the court heard argument on defendant's motion under § 2255 and the petition for writ of mandamus.

## DISCUSSION

Defendant moves to enforce the judgment imposed by requiring the BOP to rescind its termination of the Program and ordering BOP to consider his eligibility for the Program. However, the judgment imposes a sentence of 30 months and recommends commitment at either

---

[1]The government moved to dismiss the petition, and that motion is addressed in a separate Order filed in Civ No. 05-560-AA.

the ICC at Lompoc, California or Sheridan, Oregon. Given that the court can only recommend placement, there is nothing for this court to enforce.

Alternatively, defendant requests that the court grant him habeas relief and vacate his sentence. Under 28 U.S.C. § 2255, a defendant may challenge his conviction on grounds that "the sentence was imposed in violation in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of that maximum authorized by law . . . ."

Here, defendant argues that the BOP's termination of the Program: 1) violates Article I, § 7, of the United States Constitution; 2) exceeds its statutory authority; 3) constitutes a substantive rule change subject to notice and comment under the Administrative Procedures Act (APA); 4) is arbitrary and capricious under the APA; 5) violates the *Ex Post Facto* Clause of the United States Constitution; and 6) renders his sentence unconstitutional under the Due Process Clause.

The government first argues that defendant waived the right to collaterally attack his sentence except for claims of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable statute or guidelines. However, the fact that the Program was not an available option at the time of sentencing is "newly discovered evidence," and I do not find that

the waiver bars review of defendant's motion.

However, defendant's arguments under Art. 1, § 7, the APA, and the Ex Post Facto Clause do not contest the fact, length, or legality of his sentence but only the manner in which it is executed, i.e., the refusal to place defendant in a Shock Incarceration Program. "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) (citations omitted). Regardless, I do not find that the BOP's termination of the Program violates the Constitution or the APA.

Defendant argues that the BOP's termination of the Program effectively renders 18 U.S.C. § 4046 a nullity, thereby repealing it without congressional authorization in violation of Art. 1, § 7 of the United States Constitution. I disagree.

Section 4046(a) provides that the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement." 18 U.S.C. § 4046(a). Thus, the statute explicitly authorizes the BOP to place eligible prisoners in the Program but does not require that it do so. See Jama v. Immigration & Customs Enforcement, 125 S. Ct. 694, 703

(2005) ("The word 'may' customarily connotes discretion."). In contrast, other statutory provisions authorizing BOP program use mandatory rather than permissive language. See, e.g., 18 U.S.C. § 3621(e)(1) ("the Bureau of Prisons shall, subject to the availability of appropriations, provide residents substance abuse treatment"); see also Lopez v. Davis, 531 U.S. 230, 241 (2001) (contrasting use of the words "may" and "shall" in same statutory section governing BOP actions).

Additionally, Congress has not specifically allocated funding for the Program. In Lincoln v. Vigil, 508 U.S. 182 (1993), the Supreme Court considered the federal Indian Health Service's termination of a program for Indian children in order "to reallocate the Program's resources." Id. at 184. Relying on the fact that "Congress never expressly appropriated funds" for the Indian Health Service program, the Court explained, "The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion." Id. at 186, 192. The Court thus concluded that it could not intrude on the agency's budgetary discretion "as long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives." Id. at 193.

Given that the statutory language is permissive rather than mandatory, and Congress has not specifically allocated funding for operation of the Program, I do not find that the BOP's termination

of the Program effectuated a repeal of the statute or otherwise exceeded its statutory authority.

Next, defendant argues that the BOP's termination of the Program violates the APA, because it did not follow the notice and comment requirements of rule-making. Under the APA, rules promulgated by administrative agencies must follow certain procedures unless they are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). The procedural requirements for all non-exempt rules include public notice, the opportunity for public comment, and publication in the Federal Register. Id. § 553(b),(c).

In Lincoln, the Supreme Court held that the BIA's termination of a children's program was exempt from APA notice-and-comment requirements, either as a rule of agency organization or as a general statement of policy. 508 U.S. at 197 (citing 5 U.S.C. § 553(b)(3)(A)). "Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation." Id. The court reasoned that "decisions to expend otherwise unrestricted funds are not, without more, subject to the notice-and-comment requirements of § 553." Id. at 198 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402

(1971)).

Here, the BOP has not issued new rules or regulations restricting participation in the Program or altering requirements for eligibility. Lincoln, 508 U.S. at 198-99. Rather, the BOP has issued a general statement of policy that it will no longer fund the Program and will reallocate those resources. Finally, contrary to the finding in Castellini v. Lappin, 365 F. Supp. 2d 197, 203 (D. Mass. 2005), the BOP did not establish and operate the Program pursuant to regulation. Rather, the Program existed for several years without implementing regulations. Therefore, I do not find that the BOP's termination of the Program is subject to notice and comment under the APA.

Defendant also argues that the termination of the Program is impermissibly retroactive if applied to him. However, defendant was not - even provisionally - accepted into the Program. See Bowen v. Hood, 202 F.3d 1211, 1218 (9th Cir. 2000) (holding that a group of prisoners "cannot make the retroactive claim because its members had not received any form of acceptance into a substance abuse treatment program at the time the Bureau's interpretation was adopted").

Similarly, defendant argues that termination of the Program violates the Ex Post Facto Clause by increasing the punishment that he would have otherwise received under the Program. See California Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995) (the Ex Post

Facto Clause prohibits laws that retroactively "increase the punishment for criminal acts"). A law violates the Ex Post Facto Clause if it "worsens conditions imposed by its predecessor" by, for example, making early release or parole more difficult to obtain. Weaver v. Graham, 450 U.S. 24, 33 (1981).

However, the termination of the Program is an agency decision to discontinue funding for a program which, in the BOP's unfettered discretion, could lead to reductions in prison sentences. See Smith v. U.S. Parole Comm'n, 875 F.2d 1361, 1367 (9th Cir. 1989) ("[T]he operative factor in assessing whether a directive constitutes a 'law' for ex post facto purposes is the discretion that the Parole Commission retains to modify that directive or to ignore it altogether as the circumstances may require."). Unlike the provisional good time credits and overcrowding gain time discussed in Weaver and Lynce v. Mathis, 519 U.S. 433, 444-45 (1997), the determination of whether a prisoner is eligible to participate in the Program is discretionary and "is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." 28 C.F.R. § 524.30.

In sum, I do not find that the BOP's termination of the Program exceeded its statutory authority or violated the Constitution or the APA.

In addition to arguing that the BOP's termination of the Program was unlawful, defendant argues that it renders his sentence

invalid for lack of due process, because the court necessarily relied on false or unreliable information when imposing sentence and recommending participation in the Program. I find that this claim implicates the validity of defendant's sentence and is properly raised in his motion under § 2255. See United States v. Eakman, 378 F.3d 294, 297 (3rd Cir. 2004) (defendant contested the validity of his sentence when he argued that the court committed an error of law that fundamentally tainted the sentencing proceeding when it incorrectly assumed that the BOP had discretion to place him in a community corrections center).

A defendant's due process rights are violated when a sentencing court relies on materially false or unreliable information. United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995). To challenge the information used in sentencing, a defendant must show that the challenged information is 1) false or unreliable and 2) demonstrably formed the basis for the sentence. United States v. Caperell, 938 F.2d 975, 980 (9th Cir. 1991) (citing United States v. Columbus, 881 F.2d 785, 787 (9th Cir. 1989)).

The government urges the court to adopt the reasoning in United States v. Serrato, Civ. No. 05-696-BR (D. Or. July 14, 2005), where Judge Brown found that Serrato failed to establish that the court relied on misinformation of a constitutional magnitude. Judge Brown found that Serrato could not and did not

contest the legality of her sentence at the time it was imposed, because the BOP did not terminate the Program until after Serrato was sentenced and the court was not misinformed regarding the availability of the Program at the time of sentencing. See Opinion and Order attached to Government's Response, pp. 9-10, 14-15.

Judge Brown relied on United States v. Addonizio, 442 U.S. 178 (1979), where the Supreme Court held that post-sentencing changes in the guidelines of the Parole Commission that resulted in a longer mandatory minimum term of imprisonment than intended by the trial judge in imposing sentence, did not provide a basis for collateral attack on the sentence pursuant to 28 U.S.C. § 2255. Specifically, the Court found that post-sentencing parole guideline changes that frustrate a sentencing court's subjective expectations in imposing sentence cannot give rise to an error of constitutional magnitude. Id. at 186-87.

I find the facts of this case distinguishable from those in Serrato. When imposing sentence, I relied on the fact that the Program was an available option and that defendant would be considered for participation in the Program. See Eakman, 378 F.3d at 301-02; United States v. Ruster, 712 F.2d 409, 412-13 (9th Cir. 1983) (finding a violation of the defendant's due process rights when the court relied on misunderstanding of a parole rule's effect on the sentence imposed). However, this fact was not correct or reliable at the time of sentencing on December 16, 2004. Although

the Program was not formally terminated until January 14, 2005, prisoners were not being considered for eligibility as of November 2004. See Defendant's Reply Memorandum, Ex. A. Notably, the Supreme Court's holding in Addonizio was based on the fact that the alleged error was the frustration of the sentencing judge's subjective expectations rather than the reliance on an objectively factual error. Addonizio, 449 U.S. at 187. In contrast, I relied an objectively unreliable fact that was material to my determination of sentence and demonstrably formed the basis of the sentence imposed. Therefore, defendant's sentence was imposed in violation of his right to due process.

## CONCLUSION

Defendant's Motion to Vacate, Set Aside, or Correct Judgment Under 28 U.S.C. § 2255 (doc. 48) is GRANTED, and the government's Motion to Dismiss (doc. 52) is DENIED. The Judgment and Findings of Fact issued on December 16, 2004 are HEREBY VACATED.

IT IS SO ORDERED.

Dated this 27 day of September, 2005.

                         /s/ Ann Aiken
                         Ann Aiken
                  United States District Judge